626 A.2d 522

**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, Appellee/Cross–Appellant,**

v.

**Ronald B. WOLFE and Rose Wolfe, his wife, Richard C. Angino and Angino & Rovner, P.C., Appellants/Cross–Appellees.**

Supreme Court of Pennsylvania.

Argued May 7, 1991.

Resubmitted Feb. 19, 1993.

Decided May 28, 1993.

Reargument Denied July 7, 1993.

Richard C. Angino, Harrisburg, for appellees.

Dennis J. Bonetti, Harrisburg, for appellant.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

### OPINION ANNOUNCING THE JUDGMENT
### OF THE COURT

PAPADAKOS, Justice.

We are called upon to determine the priority of payment from an initial lump sum payment arising out of a structured settlement. Are the attorneys who created the fund for their injured client to be paid their fees in full before the rights of a subrogee are fulfilled, or should the subrogee, the worker's compensation carrier which advanced payments to the injured client during the pendency of the settlement, be reimbursed before any other payments are made? Or should the proverbial baby be cut in half?

This case arises from injuries suffered by Appellant–Cross–Appellee, Ronald Wolfe (hereinafter "Wolfe"), when he fell while making deliveries for his employer. The employer's compensation carrier, Pennsylvania Manufacturers' Association Insurance Company, (hereinafter PMA), Appellee–Cross–Appellant, paid Wolfe's compensation benefits. Wolfe subsequently instituted a personal injury action against a third party tortfeasor. Wolfe was represented by Appellant–Cross–Appellee, the law firm of Angino & Rovner, P.C. (hereinafter

"Angino"), who were to be paid a contingent fee equal to forty (40%) percent of the amount recovered.

In April of 1985, settlement negotiations between the third party tortfeasor and Wolfe began. The result was an agreement that the case would be settled on the basis of a structured settlement whereby the total value of the settlement would not be paid at settlement, but rather spread out over a number of years. The structure envisioned an initial payment of $110,000.00 to Wolfe, which Wolfe orally agreed to pay Angino as full payment for Angino's contingent fee, plus monthly payments to Wolfe of $1,250.00 for life. Wolfe was also to receive sizeable lump sum payments every five years for the next twenty-five years.

PMA objected to the proposed settlement on the ground that it did not provide a sufficient initial payment to reimburse PMA as provided in Section 319 of the Worker's Compensation Act,[1] for compensation it had already paid Wolfe. Eventually the parties agreed to escrow $55,000.00 of the initial settlement amount, pending resolution of the dispute between PMA and Angino. PMA subsequently instituted the instant action seeking to enforce its statutory subrogation lien. The trial court found that PMA's statutory subrogation interest had priority over Angino's rights, and awarded the escrowed

1. 77 P.S. § 671, Section 319 of the Act, provides, in relevant part: Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of the compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

funds to PMA. The Superior Court affirmed, 386 Pa.Super. 333, 563 A.2d 94, and this appeal followed.

Wolfe and Angino contend that the trial court and the Superior Court erred in determining that PMA, rather than the attorneys, is entitled to first payment from the lump sum initial payment in the structured settlement. PMA argues that the Superior Court erred in upholding the trial court's grant of Wolfe's Motion for Summary Judgment as to Counts II and III of PMA's complaint and in upholding the trial court's refusal to award PMA damages from breach of contract or negligence.

In reviewing this first issue, the Superior Court properly noted that this case does not involve a question of entitlement, but rather a question of priority. PMA is entitled to payment because it fulfilled its duty to provide compensation benefits to Wolfe, and Angino is obviously entitled to payment for assisting in the creation of a fund from which benefits and compensation could be paid. The question is, who takes first? The Superior Court thought that PMA did.

As noted, PMA objected to the proposed settlement on the ground that it did not provide a sufficient initial payment to reimburse PMA as provided by Section 319 of the Worker's Compensation Act for compensation it had already paid Wolfe, and PMA subsequently instituted the instant action seeking to enforce its statutory subrogation lien. Count II of PMA's Complaint was a contract claim in which PMA alleged that Angino agreed to represent PMA in connection with the Wolfe personal injury suit, but in failing to do so, is liable for damages in the amount of all benefits PMA paid to Wolfe, plus interest. Count III of PMA's Complaint was a tort claim in which PMA alleged that Angino was negligent in failing to protect PMA's subrogation interest. The trial court awarded the escrowed funds to PMA, as noted, but granted Angino's Motion for Summary Judgment as to Counts II and III of the Complaint, refusing to award PMA any damages for breach of contract or negligence by Angino. PMA filed the instant cross-appeal with regard to the Superior Court affirmance of

the trial court's grant of summary judgment as to Counts II and III.

■ We will first take up and consider, as did the Superior Court, PMA's cross-appeal. Our review of the record in this case indicates that the trial court properly granted Angino's Motion for Summary Judgment. The trial court found that PMA waived its claims under Counts II and III by entering into the Escrow Agreement of June 25, 1985.[2] That agreement was made for the specific purpose of obtaining a settlement in the Wolfe negligence action and, as noted by the trial court, "it embodies the outer limits of the parties (sic) rights and liabilities with respect to the priority of their claims." The facts in this record amply support the finding of waiver; the Superior Court affirmed; and we will not disturb their conclusions.

■ As to the priority question, however, we must reverse the Superior Court. Section 319 of the Worker's Compensation Act, 77 P.S. § 671, cited above, is at least clear that an employer is *subrogated* to the *"right"* of an employee.

But the Superior Court panel misconstrued the nature of the question at issue here. They stated that:

Determining who shall be paid first is a question of statutory construction. That is, where there is a structured settlement and some monies are paid at the outset, but the initial payment is not enough to cover the claims of both the attorney for the employee and a subrogated employer/carrier, does Section 319 contemplate that the injured employee's attorney

2. The agreement recited, in part:
WHEREAS, a dispute has arisen between Angino and PMA as to PMA's entitlement to recover its subrogation lien from the initial lump sum payment of $110,000. It is PMA's position that it is entitled to recover the [sic] subrogation interest from the initial lump sum payment to the extent of 60 percent of PMA's total workmen's compensation lien existing at the time of this Agreement and which would recognize a 40 percent attorney's fee payable to Angino for professional services rendered in connection with developing the settlement fund.

shall be paid first out of those monies, or does it contemplate that the employer/carrier will be paid first?

386 Pa.Super 344, 563 A.2d at 99.

The central issue in this case must be resolved on subrogation principles (which Section 319 makes expressly relevant) consistent with standards of fairness and equity. As to subrogation, it has been stated that:

> The rights to which the subrogee succeeds are the same as, but no greater than, those of the person for whom he is substituted. He cannot acquire any claim, security, or remedy the subrogor did not have. Moreover, the rights, claims, and securities to which he succeeds are taken subject to the limitations, burdens, and disqualifications incident to them in the hands of the party to whom he is subrogated, and subject to any defenses that might have been urged against the latter. Beyond this he has no right and no valid claim for protection.

73 Am.Jur.2d, Subrogation § 106, pp. 665–6. On this logic, it would seem that if an employee enters into a contingent fee agreement and a structured settlement agreement is reached to pay the attorney who creates the fund a 40% fee, the employer's subrogation lien is subordinate to the contract claims of the attorney. The worker's compensation carrier is not entitled to any subrogation until the injured employee has the "right" to and receives such compensation.

In determining whether or not an injured employee is entitled, or has a "right," or does receive any payment from a third party, one must first deduct reasonable attorney's fees and expenses incurred in obtaining a recovery or in effecting a compromise settlement in the first place. The reasons for this conclusion are simple ones. The attorney must get *first* priority because the equitable doctrine of subrogation so dictates and, most significantly, simple principles of fairness instruct us that, *but for the attorney's actions,* there would be no fund for *either* the worker's compensation carrier or for the client-injured employee.

This Court, in the case of *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985), expressed the statutory requirement for calculating the carrier's pre-settlement subrogation lien and its responsibility for fees and expenses in express terms. We clearly required that the attorney's fees and other proper disbursements be subtracted first from the gross recovery to get the net recovery. What we held there implicitly, we now hold expressly, *i.e.*, that the attorney who creates the fund is entitled to be paid first before the worker's compensation carrier or the employee receives any benefit from a third party settlement. This is regardless of how the attorney's fee is pro-rated ultimately between the employer and the employee.

In the few remaining areas where worker's compensation subrogation continues, the system does at least provide some equity and fairness by requiring that both the carrier and the injured victim share the costs of the attorney who creates the fund. It leaves the victim and his attorney in control as to when a case is settled or tried and as to the type of settlement entered into. The carrier benefits from the whole third-party settlement by a combination of initial reimbursement and/or subsequent suspension of payments, until such time as they equal the value of the net settlement. The client is charged a fee on the value of the entire third-party settlement, and the carrier, which takes advantage of the whole fund, must pay a proportionate share for this enlarged—and very valuable—benefit. Both carrier and employee receive something less than full reimbursement because each must pay toward the incurred attorney's fees and costs which under our system are not recoverable from the third party tortfeasor.

The Superior Court, in its opinion, states that the precise question involved in this case has not been "previously addressed in our appellate case law." However, Wolfe–Angino correctly assert that the underlying principles have been well-settled for some time, and the Superior Court panel, in deciding to give the worker's compensation carrier a right to the up-front monies superior to that of the attorney creating

the fund, has placed itself at odds with subrogation principles and with prior decisions of our Court as well as with those of its own Court.[3]

Subrogation is an equitable principle and the subrogee carrier can have no greater rights than the subrogor employee. The subrogor employee entered into a contingent fee agreement to pay a 40% fee. PMA cannot expect to receive money before the injured employee has the right to receive money and cannot expect to receive money without first paying his contractual obligation incurred in return for the attorney's work in creating the fund.

Despite *Rollins* and *Furia v. City of Philadelphia*, 180 Pa.Superior Ct. 50, 118 A.2d 236 (1955), the Superior Court held that PMA deserves to be fully compensated from any and all third-party settlement cash and that Mr. Wolfe's counsel should be reimbursed for the balance of any attorneys' fees and costs from the periodic payment to be paid to Mr. Wolfe. Such a ruling clearly ignores and interferes with a lawful contingent fee agreement, the third party settlement, and equitable subrogation principles. The worker's compensation carrier, in effect, gets fully reimbursed while the attorneys receive their fees over a period of 18½ years at the rate of $500.00 per month. (Assuming the contingent fee was $110,-000.00) The injured worker would thus receive less ($750.00 monthly) than his worker's compensation payments ($1,133.33 monthly) would have been and must wait for his money.

The worker's compensation law cannot be applied in such a manner as to place the injured employee in a position of receiving less monthly benefits after a settlement than he was receiving in worker's compensation payments. Third party settlements inure to the benefit of the carrier as well as the

3.  Under prior Worker's Compensation statutes, this Court held that the employer's right of subrogation extends only to the *net* amount of a verdict against a third party wrongdoer after deducting attorney fees and expenses. See, *Ellis v. Atlantic Refining Co.*, 309 Pa. 287, 163 A. 531 (1932). See also *Wilson v. Pittsburgh Bridge and Iron Works*, 85 Pa.Super. 537 (1925); *Vitello v. Mazen*, 19 W.C.B. 193 (1936); and see, Skinner, Workmen's Compensation Law of Pennsylvania, Vol. II, (Geo. T. Bisel Co., 1947), pp. 921–923.

injured employee and the attorney's. The carrier's position would have a chilling effect upon such settlements to the detriment of all concerned except the third party tortfeasor.

The panel's decision in this case is in conflict with another panel's decision in *Johnson v. Sears, Roebuck & Company* and leaves attorneys with no guidance on how to calculate a contingency fee on a structured settlement. In *Johnson v. Sears, Roebuck & Co.*, 291 Pa.Superior Ct. 625, 436 A.2d 675 (1981), a panel of the Superior Court held:

> The Johnsons urge us to find that the most equitable method of determining the amount due their former attorneys is to award them one-third of the lump sum payments plus one-third of any periodic payments if and when received.... Considering the nature of annuity settlements and the fact that they may be paid out over an extensive period of time, we believe this method of payment can be both unwieldy and impractical.

*Id.* at 630, 436 A.2d at 678.

The panel, in the instant case, provides for plaintiff attorneys to be paid in such a fashion as *Johnson* considered as "both unwieldy and impractical."

The parties and their counsel in the third party settlement assert that they relied on the Superior Court's holding in *Johnson* and our holding in *Rollins* to structure the terms of settlement. The Superior Court panel, however, overruled *Johnson, sub silentio.* For the reasons set forth above, we hold that the attorneys for Wolfe were entitled to first payment from the initial payment in the structured settlement agreement. To that extent, the Superior Court decision in this case is reversed.[4]

4. Our resolution will provide full payment to the attorneys in satisfaction of their contingency fee agreement, the injured party will continue to receive the sum of $1,250.00 per month from the structured settlement, and the worker's compensation carrier will suspend its obligation to pay the injured worker the sum of $1,135.33 per month until its subrogation rights are satisfied.

CAPPY, J., concurs in the result.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., joins.

ZAPPALA, J., dissents and would affirm based on the Superior Court opinion.

FLAHERTY, Justice, dissenting.

While the majority's contractual analysis is sound, I think it overlooks the fundamental consideration of the case, which is the fiduciary relationship between attorney Angino and the Pennsylvania Manufacturers' Association Insurance Company (PMA). Angino totally abandoned his duty to his client PMA, so he should not be permitted to profit from his misfeasance.

After undertaking to represent the Wolfes in a personal injury action against the owner of land on which Mr. Wolfe was injured, Angino agreed to represent PMA, the workers' compensation carrier of Wolfe's employer, with regard to PMA's statutory lien under 77 P.S. § 671, the right to recoup its compensation payments from an injured worker's judgment against a negligent third party. In so doing, Angino undertook all the duties an attorney owes to his client as set forth in the Rules of Professional Conduct governing the practice of law in Pennsylvania. Such duties include, among others, the need to make full disclosure before representing multiple clients if there might be a conflict of interest between the clients or between the lawyer and one or more clients, Rule 1.7(b), and the prohibition against settling a case involving multiple clients without full disclosure and consultation with all clients, Rule 1.8(g).

At a minimum, attorney Angino neglected to fulfill these obligations to his client PMA. During settlement negotiations with the third-party defendant, Angino never advised PMA that a second option was available which would have provided $135,000 as an initial payment. Further, Angino admitted that he never contacted the third-party insurer to determine whether additional monies could be obtained to cover PMA's lien. To the contrary, Angino candidly testified:

In this particular situation, there would have been no reason to have gotten more than our fee up front, because it would have gone to PMA. There is no kidding about the matter. If we had taken in, as an example, up front $150,000, there would have been $40,000 there that potentially PMA would have some call for, so as this case in its factual contents presented itself, once the client decided to go structure rather than deciding to go lump sum, the primary benefits to the client would be for us not to get anything but our fee.

Angino reiterated later:

Because that would have been a decision of an attorney and a carrier to say these are the attorneys fees and expenses, and this comes up front, and if any more is gotten it will just go to PMA.... Why would you want to get any more up front because basically you'd just be giving it to PMA[?]

I think such an admission is shocking and unethical, coming, as it does, from an attorney who had agreed to represent PMA in regard to its statutory lien. For a 40% fee, Angino was to protect PMA's statutory lien, but his intent was to avoid a settlement that would provide anything to PMA up front. It was extremely important to Angino that his $110,000 fee be paid entirely up front, but PMA, his client, did not, in his mind, have a similar interest in receiving payment at the time of settlement. It is difficult to understand how the majority can accept such a standard of representation. I believe PMA, or any client, is entitled to much better protection of its interests. I think, therefore, the trial court was correct in awarding the entire escrow fund to PMA.

Thus I would affirm the order of the Superior Court.

NIX, C.J., joins this dissenting opinion.