**Dillow v. Myers**

C.P. of Carbon County, no. 00-2100.

*Ronald W. Shipman,* for plaintiff.
*Mark S. Sigmon,* for defendants.

NANOVIC, *J.,* October 23, 2003—Before us is defendants' motion in limine asking that plaintiff be precluded from introducing evidence of his medical expenses and lost wages to the extent the same have been paid by his employer's workers' compensation carrier. In addition, defendants ask that plaintiff be precluded from introducing evidence of any wage loss claim to the extent plaintiff's first-party wage loss coverage under his personal automobile insurance policy provided coverage for such loss.

## FACTS

The facts are not in dispute. (See defendants' motion in limine and plaintiff's answer, ¶¶1-13 inclusive.) On November 5, 1998, John Dillow, plaintiff, sustained injuries in a motor vehicle accident while in the course and scope of his employment with the Pennsylvania Turnpike Commission as a maintenance worker. At the time, plaintiff was seated in a dump truck owned by the commission and parked on the shoulder of the road, when his truck was struck from behind by a truck driven by the defendant, Edward John Myers, an employee of the defendant, Funk Water Quality Company.

As a result of the accident, plaintiff claims to have sustained injuries to his neck, head, ear, lower back, and

coccyx. The commission, as a self-insured employer, acquired a statutory subrogation lien of $57,220.39 for workers' compensation benefits paid to, and on behalf of, the plaintiff for medical expenses and lost wages. Of this amount, $48,434.22[1] was for lost wages paid directly to the plaintiff; the remaining $8,786.17 was for medical expenses.

On April 18, 2003, the commission agreed with defendants' liability insurance carrier to settle its subrogation claim of $57,220.39 for the payment of $40,000. This amount has been paid by defendants' insurance carrier. No release of the commission's subrogation lien has been executed nor has the commission formally assigned its lien to defendants' carrier.

## DISCUSSION

### I. *Subrogation of Workers' Compensation Benefits*

Defendants first argue that this court preclude the plaintiff from introducing evidence of medical bills and lost wages covered by workers' compensation. Defendants argue that because the subrogation lien in this case has been "extinguished" by the settlement between the commission and their insurance carrier, sections 1720 (relating to subrogation) and 1722 (relating to preclusion of

---

1. This amount equals two-thirds of plaintiff's actual wage loss totaling $72,651.33. (In the typical case, the Workers' Compensation Act requires the payment of 66 2/3 percent of the wages of the injured employee. 77 P.S. §511.) The difference, $24,217.11, represents lost wages for which plaintiff has not received workers' compensation benefits and against which defendants seek to credit first-party wage loss benefits to which plaintiff was entitled under his personal automobile insurance policy.

benefits) of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§1720 and 1722, prohibit the plaintiff from introducing evidence of the workers' compensation amounts paid.

Section 1720 of the MVFRL, provides:

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits)."[2]

Section 1722 provides:

"In any action for damages against a tort-feasor, or in any uninsured or underinsured motorist proceeding, aris-

---

2. Section 1719 of the MVFRL provides for coordination of benefits:

"(a) General rule.—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first-party benefits provided in sections 1711, 1712 or 1715 or workers' compensation.

"(b) Definition.—As used in this section the term 'program, group contract or other arrangement' includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations)." 75 Pa.C.S. §1719.

ing out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719."

Effective August 31, 1993, revisions to the Workers' Compensation Act repealed sections 1722 and 1720 insofar as they relate to workers' compensation benefits. See section 25(b) of the Act of July 2, 1993, P.L. 190, no. 44.

In *Carlson v. Bubash,* 432 Pa. Super. 514, 520, 639 A.2d 458, 461 (1994), *appeal denied,* 540 Pa. 592, 655 A.2d 982 (1995), the Superior Court interpreted section 1722 not only to preclude recovery, but to preclude the introduction of medical bills and expenses into evidence where a plaintiff was eligible to receive such benefits as first-party benefits under his own automobile insurance policy. Defendants argue that because their insurance carrier reached a settlement with the commission and plaintiff will no longer be liable to his employer for benefits paid, the rationale underlying Act 44—the recovery of workers' compensation benefits through subrogation against monies recovered from a third-party tort-feasor for injuries sustained in a work-related automobile accident—is nullified. Absent subrogation, according to defendant, plaintiff is precluded from introducing any evidence relating to plaintiff's medical bills and lost wages to the extent they were paid by his employer. We find this argument unpersuasive.

Ordinarily, when a workers' compensation carrier pays benefits to, or on behalf of, an individual, the carrier acquires a subrogation lien against any potential tort recovery from a third party.[3] The cause of action for the underlying claim of subrogation accrues on the date of injury. *DePaul Concrete v. W.C.A.B. (White),* 734 A.2d 481, 486 (Pa. Commw. 1999), *appeal denied,* 562 Pa. 664, 753 A.2d 821 (2000). However, the lien is not recoverable until the plaintiff settles his claim or is awarded a judgment.

The plaintiff utilizes the reasoning of *Pennsylvania Manufacturers' Association v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993), to argue that he should be permitted to introduce evidence of the amounts covered by workers' compensation. In accordance with this decision, the rights of a subrogee employer can be no greater than those of the employee and are taken subject to the same limitations. Further, "[t]he worker's compensation carrier is not entitled to any subrogation until the injured employee has the 'right' to and receives such compensation." *Id.* at 74, 626 A.2d at 525.

We agree with the plaintiff that the principles of subrogation espoused in *Pennsylvania Mfrs. v. Wolfe* are applicable in this case. Act 44 and its repeal of sections 1720 and 1722 of the MVFRL to the extent they relate to

---

3. The Pennsylvania Workers' Compensation Act, section 319, provides for an employer's, hence the employer's insurer's, claim to subrogation to the extent of compensation payable. Section 319 provides in pertinent part:

"Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer." 77 P.S. §671.

workers' compensation benefits express a clear legislative policy deferential to the priority and repayment of workers' compensation benefits vis-à-vis subrogation.[4] Pursuant to this policy, an employee in an action against a third-party tort-feasor is entitled to plead, prove and recover benefits paid or payable by workers' compensation.

The commission's settlement of its then-liquidated claim did not extinguish or reduce its inchoate lien on a fund which had yet to be created. Whether payment of this lien, contingent upon creation of a fund, is to be made to the commission or defendants' carrier, and how allocated, is a matter between them and is not now before us. The lien not having been released or extinguished still exists; therefore, the settlement between the commission and defendants' carrier has no effect on the introduction into evidence of medical bills and lost wages by plaintiff.

Even were we to find, however, that the statutory subrogation lien was extinguished, plaintiff's proof of his

---

4. Subrogation serves the following purposes:

"[T]he rationale for the right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence . . . . '[Subrogation] is just, because the party who caused the injury bears the full burden; the employee is made "whole," but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing.' Thus where a third party's negligent conduct causes injury to an employee actually engaged in the business of his employer, there is a clear, justifiable right to subrogation under section 319 of the Act." *City of Meadville v. W.C.A.B. (Kightlinger)*, 810 A.2d 703, 704-705 (Pa. Commw. 2002) (citations omitted), *reargument denied* (December 10, 2002).

damages would not be compromised. "Historically, workers' compensation benefits have been considered a collateral source of recovery in a plaintiff's action against the third-party tort-feasor." *Palmosina v. Laidlaw Transit Company Inc.,* 445 Pa. Super. 121, 123, 664 A.2d 1038, 1039 (1995). Under the collateral source rule, a defendant may not introduce evidence that a plaintiff has received compensation on account of his injury from a source other than the defendant. Application of the collateral source rule is not dependent on the existence of subrogation.[5] Defendant's request that the court bar the introduction of relevant evidence on damages because subrogation with respect to such damages does not exist implicitly violates the rationale of the collateral source rule.

———

5. "Generally, '[t]he collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer.' *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96, 100 (1995). This rule 'was intended to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, *e.g.* insurance.' *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 476 A.2d 350, 352 (1984); see also, *id.* at 353 (the rule is 'intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy'); *Denardo v. Carneval,* 297 Pa. Super. 484, 444 A.2d 135, 140 (1982) ('Pennsylvania law is clear; the victim of a tort is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources'), citing, inter alia, *Boudwin v. Yellow Cab Co.,* 410 Pa. 31, 188 A.2d 259 (1963)." *Griesser v. National R.R. Passenger Corp.,* 761 A.2d 606, 609 (Pa. Super. 2000). See also, *Palmosina v. Laidlaw Transit Company Inc.,* 445 Pa. Super. 121, 664 A.2d 1038 (1995) (absent express legislation to the contrary, the legislature's elimination of the workers' compensation carrier's traditional right of subrogation did not by itself preclude an employee's recovery of amounts paid by workers' compensation in third-party litigation).

To the extent plaintiff argues any recovery he obtains against defendants should be reduced by the amount defendants' carrier paid to the commission—$40,000—and not the full amount of workers' compensation benefits paid—$57,220.39—plaintiff seeks to reap a windfall to which he is neither equitably nor fairly entitled. Whatever may be the agreement between the commission and defendants' carrier as to any division of the lien proceeds, if recovery by the plaintiff is realized, it is clear that plaintiff was neither an express party nor a third-party beneficiary to the agreement. Nothing in the agreement between the commission and defendants' carrier suggests that plaintiff is to receive the benefits of a double recovery: both workers' compensation benefits and overlapping recovery from a third-party tort-feasor.

In settling with the commission, defendants' carrier has in all probability reduced, not simply deferred, its risk as a liability carrier in a third-party proceeding for the payment of workers' compensation benefits. To find otherwise would be contrary to the judicial policy of encouraging parties to compromise and settle their disputes, and that of the MVFRL of minimizing premiums. *Danko v. Erie Insurance Exchange,* 428 Pa. Super. 223, 229, 630 A.2d 1219, 1222 (1993), *aff'd,* 538 Pa. 572, 649 A.2d 935 (1994). Therefore, any amount plaintiff recovers will be subject to a statutory subrogation lien in the full amount of $57,220.39.

## II. *Preclusion of Claims for which First-Party Benefits Exist*

Defendants next argue that plaintiff is precluded from introducing evidence to prove the amount of wage loss that was recoverable under his personal automobile in-

surance policy. At the time of the accident, plaintiff was the owner and named insured for two vehicles: a 1989 GMC truck and 1991 Chevrolet Blazer. Plaintiff's policy contained a $10,000 wage loss benefit.[6] This amount was apparently neither requested nor received by plaintiff from his carrier. See 75 Pa.C.S. §1713(a) (setting forth order of priority for recovery of first-party benefits; first in priority is policy under which person is a named insured).

On this point, the law is clear. Section 1722 provides that anyone eligible to receive first-party benefits may not recover against a third party the amount of such benefits paid or payable. 75 Pa.C.S. §1722. "[A] person is 'eligible' to receive income loss benefits under the MVFRL when he has actually purchased such benefits." *Carroll v. Kephart,* 717 A.2d 554, 557 (Pa. Super. 1998). Further, evidence of the loss for which benefits exist, when nonrecoverable against a third party, is irrelevant and cannot be introduced at trial on the third- party claim. *Carlson v. Bubash,* 432 Pa. Super. 514, 520, 639 A.2d 458, 461 (1994).

Plaintiff argues that because he was working at the time of the accident, he is limited to recovering workers' compensation benefits and was not eligible to receive benefits within the meaning of section 1722. In essence, plaintiff claims that workers' compensation benefits are primary and supplant eligibility for benefits from his own

---

6. The policy provided for income loss benefits in a maximum amount of no more than $10,000 to be paid at a rate not to exceed $1,000 per month.

insurance carrier. This same argument was made, and rejected, in *Danko v. Erie Insurance Exchange, supra.*

In *Danko,* the plaintiff/employee was injured in a motor vehicle accident while in the course of her employment. At the time of the accident, her average weekly wage was $152.60. Her employer's workers' compensation insurance carrier paid her workers' compensation benefits in the amount of $139.67 per week, an amount based upon the applicable minimum compensation rate rather than two-thirds of her average weekly wage. See 77 P.S. §511. The difference between her average pre-injury weekly gross income and the workers' compensation benefits she received was $12.93. Plaintiff requested that 80 percent of this amount (*i.e.,* $10.34 per week) be paid by the defendant, her motor vehicle insurer, as first-party income loss benefits.

In holding in favor of the plaintiff, the court was required to interpret section 1712 of the MVFRL, 75 Pa.C.S. §1712(2)(i). This section provides that the income loss benefit to be provided by an insurer includes an amount equal to "80 percent of actual loss of gross income." The court held that the proper interpretation of this provision, consistent with the protection afforded claimants under the MVFRL, was to require that the weekly workers' compensation benefits received first be subtracted from the gross weekly income the employee earned at the time of the accident, and that the difference represents the "actual loss of gross income" referred to in the statute. The defendant had argued that no income loss benefits were due because the proper method to calculate income loss benefits was to multiply the plaintiff's pre-injury average weekly gross income by 80 percent and then subtract from that amount any weekly workers'

compensation benefits actually paid, a figure which exceeded 80 percent of plaintiff's weekly gross income at the time of the accident.

In reaching this decision, the court made the following comment which is equally relevant to the present case:

"It is important to recognize that the plaintiff is not seeking benefits in this case that would result in a windfall or a double recovery. She merely claims a percentage of her actual gross income loss which has not been fully covered by workmen's compensation benefits. Even with the income loss benefits we find she is entitled to receive, under the provisions of both her insurance policy and the MVFRL, she will not reach the level of gross income she enjoyed prior to her injury. In that regard, we note that the MVFRL, in 75 Pa.C.S. §1719, contains a coordination of benefits provision, which makes workmen's compensation benefits primary for income loss and other benefits which might be due a claimant who suffers disability in a work-related accident involving the use or maintenance of a motor vehicle. The plaintiff's proposed interpretation is entirely consistent with that aspect of the statute. The workmen's compensation benefits will still be considered primary, in their entirety, in offsetting the plaintiff's lost income. The defendant insurer will not be paying any income loss benefits in duplication of workmen's compensation proceeds received by the plaintiff. Rather, its payments will be based only upon the section 1712 'actual loss of gross income' suffered by the plaintiff, comprised of the difference between the weekly workmen's compensation amount she receives and her gross pre-injury weekly

wage." *Id.* at 231-32, 630 A.2d at 1223-24. (footnote omitted)[7]

Significantly, section 1719 excludes workers' compensation from those benefits over which automobile insurance is primary, but does not state that workers' compensation is exclusive when both are involved.

In this case also, plaintiff's recovery of first-party wage loss benefits would not result in a windfall or double recovery to the plaintiff. Instead, such payments would supplement, not duplicate, wage loss benefits for which plaintiff received workers' compensation. Of plaintiff's total wage loss claim, $24,217.11 represents lost wages for which plaintiff has not received any workers' compensation payments. The income loss benefits which plaintiff was eligible to receive under his personal automobile insurance policy and which defendants seek to offset against this figure are less than 80 percent of plaintiff's actual loss of gross income. Therefore, plain-

---

7. Cf. *Hertel v. Parke,* 48 D.&C.3d 456 (Lycoming Cty. 1987). In *Hertel,* the amount of medical expenses and loss in wages claimed by plaintiff were paid by workers' compensation. Defendant argued such amounts were also recoverable by plaintiff as first-party benefits and, therefore, section 1722 precluded their recovery against defendant in a third-party claim. In granting defendant's demurrer, the court held that plaintiff was entitled to the benefits covered by section 1711 of the MVFRL even though the benefits were also covered by workers' compensation. *Id.* at 459. Therefore, plaintiff was barred from also recovering the loss from defendant. To hold otherwise would have required the court to find that the legislature "intended a person injured in an automobile accident while in the course of his employment could sue a tort-feasor for medical expenses and lost wages while all others injured in similar accidents could not." *Id.* at 459. This the court was not prepared to do.

tiff may neither recover, nor attempt to prove, the $10,000 in income loss benefits to which he was entitled under the MVFRL.

## ORDER

And now, October 23, 2003, it is hereby ordered and decreed that the motion in limine of defendants Edward John Myers and Funk Water Quality Company is granted, in part, and denied, in part. Defendants' motion is denied to the extent that we find, as a matter of law, that the paintiff may plead, prove and recover those amounts paid to him by the Pennsylvania Turnpike Commission subject to a subrogation lien in the amount of $57,220.39 in accordance with our memorandum opinion of this same date.

Defendants' motion is granted to the extent that we find that plaintiff shall be precluded from proving or recovering a total actual wage loss claim in excess of $62,651.33.