646 A.2d 762

**ALLEGHENY BEVERAGE CORPORATION and PMA Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WOLFE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 8, 1994.

Decided Aug. 18, 1994.

648

Dennis J. Bonetti, for petitioners.

Richard C. Angino, for respondent.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

KELLEY, Judge.

Before the court is an appeal by Allegheny Beverage Corporation (employer), and employer's workers' compensation carrier, Pennsylvania Manufacturers' Association Insurance Company (PMA), from an order of the Workmen's Compensation Appeal Board.[1] The issue in this case involves the proper allocation of a third party structured settlement in order to satisfy employer's subrogation lien for past compensation paid where there is no money available at the time of settlement for this purpose, and a determination of employer's credits and liabilities for the future.

## I. Traditional Subrogation

The disposition of this appeal requires the proper application of the reimbursement for past compensations and allocations of attorney's fees as required by section 319 of the Workers' Compensation Act (Act)[2] to the structured settlement recoveries from the third party settlement. The pertinent language of section 319 is:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; *reasonable attorney's fees* and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement *shall be prorated between the employer and employe,* his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable *at the time of recovery* or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his

1. This case was originally argued before a three judge panel in April of 1991, and subsequently submitted on briefs to an en banc panel of this court on June 8, 1994.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation. (Emphasis added.)

This section specifically requires the employer and claimant to share pro rata the attorney's fees and costs involved to establish the recovery in the third-party claim.

In a "traditional" subrogation case, where the claimant receives a lump sum settlement from a third party, to comply with section 319, the claimant must first reimburse employer for past compensation paid to satisfy the employer's subrogation lien. The amount of the lien for past compensation paid is reduced proportionately by the attorney's fees and costs incurred in obtaining the settlement.

For example, assume that an employer has already paid past compensation of $50,000 at the time that the claimant receives a third party settlement of $150,000, and that the claimant pays his attorney 40% of the settlement or $60,000. The employer is entitled to an immediate reimbursement of $50,000 for past compensation paid, reduced by the proportionate share of attorney's fees or $20,000 (40% of $50,000). Therefore, claimant must pay $30,000 to satisfy his reimbursement to the employer for past compensation paid. This leaves $100,000 as a credit against future compensation. (Note that the $20,000 reduction benefits claimant as the employer's sharing of its proportion of attorney's fees with respect to the subrogation lien, since claimant already paid the entire attorney's fee upon obtaining the third party settlement or judgment.)

The next step is to calculate a grace period based on the remaining settlement money during which employer's responsibility for making weekly benefit payments is suspended. We do this by simply dividing the amount of the settlement money remaining by the weekly rate of compensation. In our example, assuming a weekly rate of compensation of $200, we divide $100,000 by $200 to obtain a grace period of 500 weeks. At the end of 500 weeks, assuming claimant's

condition has not changed, employer's responsibility for making weekly compensation payments will resume.

 Although employer's responsibility for paying weekly benefits during the grace period is suspended, in order to comply with section 319 the employer must pay its pro rata share of attorney's fees for the compensation suspended as it benefits from the settlement. The most equitable way to do this is to have the employer pay its proportionate share of attorney's fees each time it receives a credit. Therefore, in our example the employer would pay 40% of $200, or $80, each week during the 500 week grace period. This way if the employer's responsibility for making payments should end during the grace period because of the claimant's death or the end of his disability, then the employer will already have paid its pro rata share of the attorney's fees with respect to the amount of benefit which it has received.

An illustration of the traditional subrogation method can be found in *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa.Commonwealth Ct. 440, 625 A.2d 187 (1993). The calculations in *Pendleton* are performed in a slightly different manner but yield the same result. In *Pendleton*, the subrogation lien is divided by the gross recovery to give the percentage of the gross attorney's fees which should be deducted from the subrogation lien. The grace period is computed in the same manner. The rest of the attorney's fees not attributable to the subrogation lien are then divided by the grace period to give the weekly payment which employer must make for its pro rata share of the fees.

We will examine why the traditional subrogation method would be inappropriate to apply in the present case after reviewing the facts of this case.

## II. Factual History

Ronald B. Wolfe (claimant) suffered a work-related injury on December 19, 1981, when he slipped and fell in an icy parking lot while making a delivery for employer. Claimant sustained a serious injury to his left knee and received work-

ers' compensation benefits of $262.00 per week from PMA pursuant to a notice of compensation payable.[3]

In November of 1983, claimant filed a third party complaint in trespass against Weis Markets (Weis), the owner of the property on which he had been injured. After negotiations, claimant and Weis agreed to a structured settlement under which claimant would receive payments over a number of years rather than in one lump sum. The details of the settlement are as follows:

| | |
|---|---|
| Up-front payment | $110,000 |
| Monthly payments of $1,250 for life with 20 years guaranteed | $300,000 guaranteed |
| Balloon payments: | |
| May 20, 1990–$10,000 | |
| May 20, 1995–$20,000 | |
| May 20, 2000–$30,000 | |
| May 20, 2005–$40,000 | |
| May 20, 2010–$50,000 | $150,000 guaranteed |

The settlement agreement provided that the $110,000 up-front payment would be paid to claimant's attorney as full payment for attorney's fees. PMA objected to the settlement contending that the initial $110,000 should not be designated as attorney's fees but rather should be used to reimburse PMA for past compensation paid. Weis refused to execute the settlement unless PMA agreed to it because Weis feared that it would be subject to future legal action if PMA was not satisfied with the settlement. In the meantime, PMA had filed a civil action in the Court of Common Pleas of Dauphin County alleging entitlement to recovery of the entire amount of their subrogation lien from the initial $110,000 payment. Claimant's attorney and PMA ultimately agreed to escrow at interest $55,000 of the initial $110,000 payment, pending resolution of the civil action. PMA then removed its objection and the settlement was executed. Under the settlement Weis has paid to claimant $1,250 per month from June 20, 1985.

Thereafter, PMA filed a petition to suspend benefits and requested a supersedeas. On February 18, 1986, a referee

---

3. For later discussion, we note that $262.00 per week is equivalent to $1,135.33 per month; $262.00 × 52 = $13,624 ÷ 12 = $1,135.33.

granted a supersedeas to suspend weekly payments of compensation. Between the time of the injury and the date supersedeas was granted, PMA paid to claimant $56,666.86 in weekly benefits and $37,015.95 in medical bill reimbursements for a total accrued lien for past compensation paid of $93,-682.81 against any tort recovery.

In October of 1986, the referee issued a decision in which he continued the suspension of employer's duty to provide weekly compensation benefits. The referee ordered employer to pay $115.38[4] per week as its proportionate share of attorney's fees until claimant is reimbursed in the amount of $110,000. The referee also awarded employer a "credit" in the amount of $26.46 per week to be applied against its subrogation lien,[5] and gave employer the right to attach future lump sum payments until its total lien had been satisfied.

Both parties appealed to the board which reversed in part and affirmed in part. The board reversed the referee's grant to employer of a weekly credit of $26.46. The board concluded that claimant's attorney was entitled to the entire $110,000 initial payment and that employer must reimburse claimant for the total amount of attorney's fees. The board ordered that the accrued lien be reduced by deduction of 40% for attorney's fees ($37,473.12), leaving a net accrued lien of $56,209.69. The board directed that this amount be paid only from the future lump sum balloon payments. Because the board had accounted for the $37,473.12 attorney's fees relating

4. This figure is 40% of $288.46, which is the weekly amount received by claimant under the settlement agreement: $1,250 × 12 = $15,000 ÷ 52 = $288.46. The 40% factor comes from claimant's attorney's assertion that the present value of the settlement is $274,000. The amount designated for attorney's fees, $110,000 is approximately 40% of $274,-000. Claimant did not present any expert testimony to support this present value.

5. The weekly settlement payment of $288.46 is $26.46 greater than the weekly rate of compensation of $262.00. Presumably, by using the term "credit" the referee meant that the $115.38 weekly payment was to be reduced by $26.46 until the lien was satisfied, although the decision is not explicit in this regard. It would make little sense to give employer a credit in the traditional sense of the word and as used in subrogation cases because the money to satisfy the subrogation lien must be actually reimbursed to employer.

to the accrued lien, it directed employer to make payments of $104.80 per week (40% of the compensation rate of $262.00) until the balance of the $110,000.00 overall attorney's fee, or $72,527.00, was paid to claimant. Employer and PMA filed the present appeal from the board's decision.

Meanwhile, in the civil action in the Court of Common Pleas of Dauphin County, both PMA and claimant filed motions for summary judgment. The trial court granted PMA's motion and held that statutorily, PMA's subrogation lien had priority over claimant's attorney's claim for legal fees. *Pennsylvania Manufacturers' Association Insurance Co. v. Wolfe,* 46 D. & C.3d 594 (1988). However, the trial court ruled that by entering into the escrow agreement, PMA waived its right to the monies not included in escrow. Therefore, PMA's priority right extended only to the $55,000 included in the escrow account. *Id.*

The Superior Court affirmed the trial court, *Pennsylvania Manufacturers' Association Insurance Co. v. Wolfe,* 386 Pa.Superior Ct. 333, 563 A.2d 94 (1989), and the Supreme Court granted allocatur. *Wolfe v. Pennsylvania Manufacturers' Association Insurance Co.,* 524 Pa. 622, 571 A.2d 384 (1990). Because the appeal before this court involved the same parties and the issue of entitlement to the initial $110,000 payment, we ordered in April of 1991 that the decision here be held pending a determination by the Supreme Court on the merits of the civil action.

On May 28, 1993, the Supreme Court reversed the Superior Court's decision and held that claimant's attorney was entitled to the entire $110,000 initial payment. *Pennsylvania Manufacturers' Association Insurance Co. v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993). With the Supreme Court's decision, we may now address the appeal of the board's order.

### III. Current Status

Before discussing how the settlement should be allocated, we will review the current status of the case using an arbitrary date of September 1, 1994 as a reference point for our calculations:

The amount employer paid to claimant for past compensations and medical bills from 12/27/81 to suspension in February, 1986. $93,682.81

From 6/20/85 to 2/18/86 (9 months) the claimant enjoyed double benefits from the structured payment of $1,250.00 and the compensation paid of $1,135.33. The $1,250.00 was excess benefit to claimant.

$$9 \times \$1,250 = \$11,250.00$$

Since 2/18/86 to 9/1/94, claimant has benefited monthly by the difference of $1,250.00 and suspended compensation of $1,135.33 or $114.67 × 103 months = $11,811.01

Additionally the claimant received a balloon payment of $10,000 in May of 1990. $10,000.00

Total excess benefits received by claimant as of 9/1/94. $33,061.01

---

Thus the inequity between the claimant and employer has intensified during the past 8 plus years. The law is clear that the reimbursement for past compensations paid is to be immediate.[6] The claimant's attorney made no provision to escrow the $32,258.32 excess receipts claimant has received since May 8, 1985. Such excesses if uncertain of their allocation, should at least have been preserved by escrowing, as was the disputed attorney's fee for the $55,000. Such inconsistent treatment of favoring the attorney's personal interest while totally failing to preserve the excess recovery is at the very least unprofessional.

## IV. Ratio

Initially, we wish to note three factors about the current case which make it difficult or impossible to apply the traditional subrogation analysis. First, the concept of a grace period does not apply, because claimant will be receiving monthly settlement payments for the rest of his life which are greater than the workers' compensation benefits he would have received. Barring unforeseen circumstances, employer

6. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board,* 506 Pa. 592, 487 A.2d 794 (1985).

will therefore never be responsible for paying compensation benefits again.

The second factor, a corollary to the first, is that employer will never receive the benefit of the full settlement, because claimant will always receive more from the settlement than he would have received in compensation benefits. It was therefore error for the board and the referee to order employer to pay the full $110,000 of attorney's fees because employer will never obtain credits equal to the full settlement.

The third factor, which leads into our discussion of the ratio to be used to calculate employer's responsibility for attorney's fees, is that we will not know the full value of the settlement until the time of claimant's death because he is guaranteed the monthly payments for life. We therefore have little choice but to use the minimum guaranteed payout for our calculations.

The first step we must take is to calculate a ratio to be used in determining employer's pro rata share of attorney's fees for the credits it receives and for the reimbursement for its subrogation lien. To properly allocate the attorney's fees between the employer and the claimant, the $110,000 attorney's fee must be allocated between them over the guaranteed moneys available for recovery, or $450,000.[7] Thus we must divide $110,000 (the attorney's fee and costs) by $450,000 (the guaranteed recovery) to establish the ratio.

This is algebraically stated:

$110,000 ÷ $450,000 = .244444 or 24.4444%

This factor will properly allocate the attorney's fees between employer and claimant as the recovery is allocated between them for reimbursements of benefits paid and or suspended.

Claimant argues that we should consider the present value of the settlement at the time of settlement in order to compute the proper ratio, and that we should therefore use a ratio of

7. This figure represents the total of the guaranteed monthly payments or $300,000, plus the total of the balloon payments or $150,000. Although the structured settlement payments total $560,000, the initial $110,000 attorney fee is excluded because none of $110,000 is available for subrogation recovery under the Supreme Court decision in *Wolfe*.

40%.[8] We do not do so for four reasons. First, claimant's attorney has waived the right to a percentage of the settlement by accepting a lump sum fee. Second, there is no expert evidence of record which would support the present value which claimant asserts.

Third, we do not normally use present and future values in a traditional subrogation case because of the difficulties involved in making such calculations, even though such calculations are warranted. In a traditional subrogation case we calculate the grace period by simply dividing the gross settlement money left over after reimbursement of the subrogation lien by the weekly rate of compensation, even though that gross recovery has a future value much greater than its present value. In other words, if we purchased an annuity with that money or simply put it in an interest bearing account and withdrew a weekly amount equal to the compensation rate, the weekly payments would last much longer than the grace period which we have calculated due to the interest which that money is earning. We see no reason to consider present and future values in our calculations in the present case when we do not normally do so.

Fourth, under the facts of the present case, employer will not receive reimbursement for its subrogation lien until many years after the settlement, whereas in a traditional subrogation case the lien would be reimbursed in full at the time of the settlement. We will make no adjustments for present and future value with respect to the subrogation lien, i.e., we will not require claimant to pay any interest on the money owed to employer, and it would be unfair to employer to require employer to in effect pay interest on the attorney's fees owed to claimant when we do not require claimant to pay interest on the money owed to employer. This is the most equitable and simplest way of dealing with the unique facts of this case.

## V. Reimbursement and Credits

Once the proper ratio for the recovery of attorney's fees is determined, the allocation of this fee may be calculated to

**8.** See footnote 4.

reflect how the claimant and employer each benefit from the third party recovery. Having established a ratio of 24.4444%, we will apply that percentage to our subrogation and reimbursement calculations.

The first consideration must be given to the obligations of the claimant to reimburse the employer for the past compensations and medical expenses paid.

The amount paid by employer to and on behalf of claimant until suspended on February 20, 1986 was $93,682.81

In order for the employer to share the attorney fee and cost, the amount should be debited by his benefiting from the recovery. Thus the amount should be reduced by the 24.4444% or $22,900.20

Thus, the net balance claimant owes the employer for past paid compensation and medical is $70,782.61

The recoveries generate several sources for credits and payments from which to "pay" the net due to the employer by the claimant for the subrogation lien. These sources are (1) the excess of the monthly settlement payments over the monthly compensation rate, (2) the balloon payments, and (3) credits for the weekly pro rata share of the attorney's fees which employer should be paying to claimant. On a continuing monthly basis, the employer has owed the claimant the attorney fee allocation of the suspended compensation.

This monthly calculation is the suspended compensation of $1,135.33

multiplied by the factor of 24.4444% equals the monthly debiting of the amount owed $ 277.52

multiplied by the 103 months from February, 1986 to September, 1994

$$277.52 \times 103 = \$28,584.56$$

what the employer owed the claimant $28,584.56

leaving a balance due to the employer from claimant as of September 1, 1994 in the amount of $70,782.61 − $28,584.56 = $42,198.05

On a monthly basis the claimant should pay to the employer the monthly excess that the claimant receives, as a difference between the $1,250.00
recovery and the suspended compensation of $1,135.33

resulting in $ 114.67

added together with employer's allocation of attorney fees of $277.52 = $ 392.19

the combined monthly reduction would continue until the next balloon payment due May, 1985, eight months equalling (8 × 392.19) $ 3,137.52

leaving the balance due to the employer by the claimant before the balloon payment of May 20, 1995 of $39,060.53

the entire balloon payment of $20,000 must then be paid to employer by claimant and credited $20,000.00

the balance due employer from claimant on May 20, 1995, after the balloon payment is $19,060.53

Thereafter, the obligation should, as a monthly continuing basis credited by the $392.19 being the debit of the $277.52, and the $114.67 excesses to be paid by the claimant to the employer equals a requirement of 48.6 months:
$19,060.53 $392.19 = 48.6

Thus: the 48th month from May, 1995 to May, 1999 ($392.19 × 48) $18,825.12

leaving a balance due on June 20, 1999 of $ 235.41

In June of 1999 the employer will only withhold $235.41 as the full satisfaction of the compensation paid reimbursement. Employer shall then pay claimant the difference of $235.41 from $277.52 or $42.11. At this time the reimbursement obligation of the claimant to the employer will be satisfied. Thereafter, on a recurring monthly basis the obligation of the employer to the claimant for the $277.52 shall continue and be paid by the employer to the claimant. The monthly excess of $114.67, as well as the subsequent balloon payments, shall be his to enjoy.

The obligation of employer to reimburse claimant for the attorney's fees on the suspended compensation should continue. This obligation should end when suspension is terminated or the $450,000 payments shall have been recovered under the settlement agreement. Since the third party settlement was only certain in value for the guaranteed payments, the equitable allocation for attorney's fees was necessarily determined and allocated upon such amounts.

We have chosen the date of September 1, 1994, to perform our calculations in anticipation of this matter being remanded

to a workers' compensation judge (WCJ) [9] by that date. If a WCJ does not address the case by that date, then the calculations we have made may be adjusted accordingly.

## ORDER

NOW, this 18th day of August, 1994, the order of the Workmen's Compensation Appeal Board, dated July 17, 1990, at No. A–92466, is vacated and the matter is remanded for proceedings consistent with the attached opinion.

Jurisdiction relinquished.

McGINLEY, J., dissents.

McGINLEY, Judge, dissenting.

I respectfully dissent. Initially, I believe the majority incorrectly calculates the ratio used to determine employer's pro rata share of attorney's fees for credits and for reimbursement in connection with the subrogation lien. Under section 319 of The Pennsylvania Workmen's Compensation Act (Act) [1], the employer is subrogated to the full recovery but must pay attorney's fees on any recovery that is actually realized. Accordingly, attorney's fees must be allocated between claimant and employer based on the entire settlement regardless of who the initial payment goes to. The calculation of the attorney's fee rate, then, should be $110,000/$560,000 = .1964 or 19.64%.

However, $560,000 is not the appropriate figure for this calculation because the claimant did not receive a lump sum at the time of settlement. Through the settlement claimant secured the right to receive payments of varying amounts with a minimum guaranteed total of $560,000 over twenty-five years. There is no dispute that the right to receive payments of varying amounts totalling $560,000 twenty-five years from now is worth far less than the right to receive $560,000

9. The 1993 amendments to the Act replaced the term "referee" with "workers' compensation judge."

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

presently. All of the parties recognized this (including employer's insurer in the escrow agreement) and expressly agreed that the net present value of the structured payments at the time of settlement was $275,000. This is further reflected in the attorney's fees. Because of the open-ended settlement structure, there was no lump sum on which to calculate the attorney's fee. The fee was determined by multiplying the 40% rate times the net present value of $275,000 to arrive at a fee of $110,000.

Section 319 provides for calculation of attorney's fees relating to the accrued lien by taking the proportion of the gross lien to the total recovery and multiplying that amount to the total attorney's fees. As the gross lien is $93,683 and the total recovery is $275,000 then the calculation works as follows: $93,683/$275,000 × $110,000 = $37,473. Claimant's actual debt to PMA for the accrued lien therefore is $93,683 minus the corresponding attorney's fees of $37,473 which results in a net accrued lien of $56,210. Employer, however, is not only liable for a pro rata share of attorney's fees based on the amount of compensation already paid but is also liable on the amount of *future* compensation it is relieved from paying due to the settlement. *Wall v. Conn Welding & Machine Co.*, 197 Pa.Superior Ct. 360, 179 A.2d 235 (1962).

Substituting this computation for the majority's results in the following:

| | | |
|---|---|---|
| The suspended compensation | $1,135.33 | |
| multiplied by the factor of 40% equals the monthly debiting of the amount owed | $ 454.13 | |
| multiplied by the 103 months from February, 1986, to September, 1994, ($454.13 × 103 = $46,775.60), | | |
| or the amount the employer owed the claimant | | $46,775.60 |
| leaving a balance due to the employer from claimant as of September 1, 1994, in the amount ($56,210 − $46,775.60) = | | $ 9,434.40 |
| On a monthly basis the claimant should pay to the employer the monthly excess that the claimant receives, as a difference between the | $1,250.00 | |
| recovery and the suspended compensation of | $1,135.33 | |
| resulting in | $ 114.67 | |

added together with employer's allocation of attorney's fees of $454.13 = $ 568.80
the combined monthly reduction would continue until the next balloon payment due May, 1995, eight months equalling (8 × 568.80) $ 4,550.40
leaving the balance due to the employer by the claimant before the balloon payment on May 20, 1995 of $ 4,884.00

The remaining $4,884 should be paid to the employer from the balloon payment which is due on May 20, 1995. At this point the lien will be satisfied. Thereafter the employer will be realizing a benefit on a monthly basis as the claimant receives the $1,250 settlement payments. Accordingly, employer will be obligated to keep paying the attorney's fees for such benefits. As of May, 1995, employer will have paid a total of $87,881.43 in attorney's fees. I believe Employer should pay $454.13 each month until May, 1998, when the amount will have reached $110,000.

This delay in payment of PMA's perfectly legitimate lien is traceable to the settlement which provided an initial lump-sum payment sufficient to pay the attorney's fees but not to pay the lien. The Supreme Court affirmed in *Pennsylvania Manufacturer's Association Insurance Co. v. Wolfe*, 534 Pa. 68, 626 A.2d 522 (1993), that the attorney in the third-party action has priority over the lienholder. However, under the terms of this settlement no money was available to pay the lien despite the provisions of section 319, thus making delay inevitable.

I have attempted to fashion an equitable resolution between conflicting valid claims. I strongly urge counsel and parties in future third-party tort actions that are subject to worker's compensation subrogation rights to provide for payment of the accrued lien at the time of settlement because the language in Section 319 expressly provides for immediate reimbursement to the employer of the accrued lien at the time of recovery or settlement in the tort action.

Accordingly, I would vacate and remand with instructions to enter an order consistent with the foregoing.

FRIEDMAN, J., joins in this dissent.