Diane MRKICH, Petitioner,

v.

WORKERS' COMPENSATION AP-PEAL BOARD (ALLEGHENY COUNTY CHILDREN & YOUTH SERVICES), Respondent.

Allegheny County Children & Youth Services, Petitioner,

v.

Workers' Compensation Appeal Board (Mrkich), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Feb. 9, 2001.

Decided June 28, 2002.

Wendy K. Ligo, Pittsburgh, for petitioner.

Vito S. Bochicchio, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, LEADBETTER, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge LEADBETTER.

In this consolidated action, claimant, Diane Mrkich, and her employer, Allegheny County Children & Youth Services, each petition for review from a decision by the Workers' Compensation Appeal Board (Board). At issue is how an employer may enforce its subrogation lien against a claimant who obtains a recovery from a third party tortfeasor. Once again we face the peculiar problems confronted by this court in *Allegheny Beverage Corporation v. Workmen's Compensation Appeal Board (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762 (1994) (*Wolfe II*), which arise from applying traditional formulas to non-traditional settlements that include annuities or other structured payments. For the reasons set forth below, we vacate and remand.

On August 18, 1994, claimant was involved in a work-related auto accident, injuring her neck and arms. After two back operations and other treatment for her back, claimant was unable to return to her position as a clerk and typist with employer. Employer conceded responsibility and pursuant to an Agreement for Compensa-

tion began paying claimant workers' compensation benefits of $246.50 per week.

On March 12, 1996, claimant commenced a lawsuit against the motorist who struck her. Shortly thereafter claimant settled, recovering $85,000.00 in cash and an annuity which paid her $918.86 per month for a period of ten years. The cost of the annuity was $85,000.00. Out of the $85,000.00 lump sum, claimant paid her attorney, Mr. Solomon, $70,000.00 in fees. By letter dated November 11, 1997, claimant misinformed employer that her third party action was settled for $85,000.00.

On February 25, 1998, employer filed a petition to seek approval of a compromise and release agreement. Claimant, represented by Scott Klein,[1] sought to surrender her rights to further compensation benefits in exchange for employer surrendering its right to subrogation under Section 319 of the Workers' Compensation Act.[2] At the time of the attempted compromise and release, employer was aware only of claimant's lump sum payment of $85,000.[3] Following a hearing, the Workers' Compensation Judge (WCJ) denied the compromise and release after determining that claimant failed to understand its legal consequences.

Thereafter, on August 20, 1998, employer filed a petition to modify/suspend/review claimant's benefits. In the first of three hearings, claimant appeared unrepresented. On cross-examination, claimant for the first time revealed the full extent of her third party settlement. The WCJ thereafter granted employer's supersedeas request and reduced claimant's benefits by 50 percent to $123.25.

At the second and third hearings, the WCJ sought to determine how to enforce employer's subrogation lien in an equitable manner. Claimant stated in the second hearing that she would be unable to reimburse employer in a lump sum, and further that she was having difficulty finding employment. At the third and final hearing, claimant reiterated these concerns and further testified that she would be unable to support herself without her annuity payments.

Based on the foregoing, the WCJ found in favor of employer, ordering claimant to satisfy immediately employer's subrogation lien in the amount of $52,676.24.[4] In the event claimant was unable to immediately pay off the lien in full, the WCJ ordered claimant to pay over her monthly annuity checks for 57 months. The WCJ found that employer was entitled to a grace period of 309 and 2/7 weeks, and further that employer must pay its share of claimant's legal fees in the amount of $101.55 per week. Additionally, the WCJ determined that claimant intentionally mislead the court by failing to timely disclose the full extent of the third party settlement, that employer timely asserted its

---

1. It is not clear from the record whose interests attorney Klein represented. He appears to have some connection with claimant's original counsel in her third party action, Mr. Solomon. Klein never had any formal relationship with claimant in the nature of power of attorney or fee agreement.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

3. In his decision dated June 3, 1998, the WCJ stated in finding of fact # 7 that "It is stipu-

lated in this matter that claimant settled her case for $85,000.00 on or about April 11, 1997." Further, the proposed settlement agreement written by Scott Klein and signed by claimant stated that the amount of the third party recovery was $85,000.00.

4. The total lien for past due benefits paid was $93,751.24 as of the last hearing before the WCJ. After deducting employer's share of counsel fees and the benefit received by employer from the supersedeas order, the WCJ calculated the net lien to be $52,676.24.

subrogation interest, and that claimant was not prejudiced by any delay. The WCJ further rejected claimant's testimony that she will be unable to support herself if ordered to pay employer's lien in a lump sum payment.

■ On appeal, the Board affirmed in part and reversed in part the WCJ's order. The Board affirmed the WCJ's calculations of the grace period and the amount of the employer's lien, as well as the order to repay the past due lien immediately.[5] The Board reversed the WCJ's order that claimant, absent the capacity to repay employer's lien in a lump sum, must pay over to employer her monthly annuity checks.

On appeal to this court, claimant again argues that the doctrine of laches bars enforcement of employer's lien and that the WCJ improperly calculated the employer's accrued lien and grace period.[6] Employer cross-appeals, arguing that the WCJ properly ordered the annuity payments to be transferred.

■ Claimant's arguments regarding the doctrine of laches are without merit. The doctrine of laches is an equitable remedy potentially applicable as an affirmative defense to subrogation claims brought by employers under Section 319 of the Act. See Roadway Express, Inc. v. Workmen's Comp. Appeal Bd. (Allen), 152 Pa.Cmwlth. 318, 618 A.2d 1224, 1226 (1992); Ward v. Workmen's Comp. Appeal Bd. (Sun Ref. and Mktg. Co.), 143 Pa.Cmwlth. 319, 599 A.2d 1013 (1991); Peeples v. Workmen's Comp. Appeal Bd. (Foster Wheeler Energy Corp.), 133 Pa.Cmwlth. 559, 576 A.2d 1190 (1990). To successfully assert the defense, the claimant must demonstrate first that employer failed to exercise due diligence in exercising its subrogation claim, and second that claimant was prejudiced by the delay. See Roadway Express, 618 A.2d at 1226. Moreover, because laches is an equitable remedy, to succeed claimant must come before the court with clean hands. See Shippenville–Elk Township Volunteer Fire Dep't v. Ladies Auxiliary of the Shippenville–Elk Township Volunteer Fire Dep't, 680 A.2d 923 (Pa.Cmwlth.1996).

■ In the case at bar, claimant argues that employer unreasonably delayed pursuing its subrogation interest for one year after learning a third party settlement had been reached. Assuming, arguendo, that employer's delay was unreasonable, claimant fails to demonstrate that she was prejudiced thereby. There is no credible evidence in the record to indicate that the delay in any way harmed claimant. Further, the WCJ found as fact that the claimant and her counsel Scott Klein deliberately misled the court regarding the extent of the third party settlement. Claimant therefore has unclean hands and is barred from seeking equitable relief via the doctrine of laches.

■ To resolve the remaining issues, we must first refer to the general principles of subrogation law. As we noted in Budd Company v. Workers' Compensation

---

**5.** Because the original record certified by the Board does not contain briefs, it is unclear whether claimant successfully preserved her doctrine of laches issue. The Board did not mention it in its decision; however because claimant references findings of fact and conclusions of law in her appeal to the Board that deal solely with the laches issue, we will treat the issue as preserved.

**6.** Claimant additionally argues that at some point during the appeals process, she became gainfully employed, although at a lesser wage, and asks that we therefore remand the case to the WCJ for a recalculation of the total accrued lien and grace period. There are a number of reasons why we cannot address this issue, not the least of which is that it is based on facts not in the record.

*Appeal Board (Settembrini),* 798 A.2d 866, (Pa.Cmwlth.2002):

> Pursuant to Section 319 of the Act, 77 P.S. § 671, where the compensable injury is caused in whole or in part by a third party, the employer who has paid compensation benefits to the injured employee is subrogated to the right of the employee against the third-party tortfeasor. Where suit is brought and a recovery obtained against the tortfeasor, the employer has a past due lien against that recovery in the amount of the past benefits paid. Employer has an absolute right to immediate payment of this past due lien from the recovery fund after payment of attorneys' fees and litigation expenses. [FN2] *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.),* 566 Pa. 420, 781 A.2d 1146 (2001); *Rollins Outdoor Advertising v. Workmen's Comp. Appeal Bd. (Maas),* 506 Pa. 592, 487 A.2d 794 (1985). To the extent the recovery exceeds the past due lien and litigation costs, the balance is paid to claimant and employer retains a contingent lien against this payment for reimbursement of future compensation benefits which may become payable.
>
> FN2. These costs of recovery must be paid first. *Pennsylvania Mfgs.' Ass'n Ins. Co. v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993) [ *(Wolfe I )* ].

It is now well settled that the "gross method" is the accepted means of calculating payments pursuant to employer's subrogation interest. *P & R Welding & Fabricating v. Workmen's Comp. Appeal Bd. (Pergola),* 549 Pa. 490, 701 A.2d 560 (1997). *See also* 34 Pa.Code § 121.18; *Emanuel v. Workmen's Comp. Appeal Bd. (Coco Bros., Inc.),* 692 A.2d 1182 (Pa.Cmwlth.1997). Under the gross method, after deducting the attorney's fees and expenses of litigation (collectively, "costs"), employer's lien is satisfied by payment of the lien amount minus the proportionate share of costs attributable to the lien. [FN3] Whatever remains of the recovery fund is paid to claimant. For purposes of gross method computation, employer is considered to have been paid, in satisfaction of its lien, both the cash it actually received and the proportionate share of costs it constructively paid. Similarly, claimant is considered to have been paid both the cash actually received and the share of costs attributable to that payment. This total amount attributed to claimant is known as the "balance of recovery." If, by the time the tort recovery is obtained the claimant is no longer disabled, each side will have obtained what it is due and will have paid its proportionate share of costs. Where claimant has not fully recovered, however, the employer retains a contingent subrogation interest in the balance of recovery paid to claimant, and receives a credit in this amount toward future compensation benefits to the extent they become payable. Employer is excused from paying future benefits until this credit is exhausted.

> FN3. In traditional gross method computation, the proportionate share of costs attributed to the lien is calculated by dividing the lien amount by the total recovery then multiplying this fraction by the total amount of costs. The same result may be reached by dividing the cost amount by the total recovery and then multiplying this fraction by the amount of the past-due lien. The latter approach provides an added measure of flexibility where the calculation becomes more complicated, such as where the tort suit is resolved by a structured settlement rather than a lump sum payment. *See Allegheny Beverage Corp. v. Workmen's Comp.*

*Appeal Bd. (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762 (1994) [(*Wolfe II* )].

This period of time, measured in weeks, is computed by dividing the credit by the weekly compensation benefit amount. The result is known as the "grace period." Since the balance of recovery attributed to claimant included claimant's proportionate share of the litigation costs, during each week of the grace period employer must repay the claimant for the litigation costs attributable to the compensation benefit it is excused from paying.

*Id.* at 868–69.

■ Cases which have described the gross method have generally explained it in terms of mathematical formulae. *See, e.g., P & R Welding & Fabricating v. Workmen's Comp. Appeal Bd. (Pergola),* 549 Pa. 490, 496, 701 A.2d 560, 563 (1997).[7] However, as we noted in *Wolfe II,* the classic formula sometimes becomes unworkable when circumstances vary from the usual pattern. *Wolfe II,* 646 A.2d at 767. This case provides an excellent illustration of such difficulties. The WCJ, a knowledgeable and experienced judge, attempted to resolve this matter by applying the calculations precisely as we set them forth in various opinions of this court. However, because the tort settlement is structured over time and was not fully disclosed until after the lump sum payment was improperly distributed, applying the traditional calculations is impossible. To do so would violate fundamental principles underlying the gross method and basic subrogation law.

■ Several fundamental principles guide us in our calculations under the gross method. First, at the heart of the gross method is the notion that fees and offsets are not taken until the party charged has received the benefit giving rise to the fee or offset. Thus, employer's share of counsel fees is deducted or paid incrementally as each subrogation payment or credit is received.. It is basically a "pay as you go" system. This is the primary difference between the gross method and the now discredited net method. *P & R Welding,* 549 Pa. at 496–99, 701 A.2d at 564–66. Similarly under any computation method, no matter how great the employer's past due lien, employer has a present right of subrogation only in the portion of the recovery that the claimant has actually received. The lien is against the recovery itself, not the claimant. *Rollins Outdoor Adver. v. Workmen's Comp. Appeal Bd.,* 506 Pa. 592, 596, 487 A.2d 794, 796 (1985).[8] In addition, "[t]he worker's compensation law cannot be applied in such a manner as to place the injured employee in a position

---

7. The traditional calculation as approved by this court and by our Supreme Court in *P & R Welding* proceeds as follows:

[total recovery]-[employer's past due lien] = claimant's balance of recovery

[employer's past due lien] / [total recovery] = employer's % share of fees and expenses

[employer's % share of fees and expenses] * [fees and expenses] = expenses attributable to lien

[employer's past due lien]-[expenses attributable to lien] = net lien paid in cash to employer

[claimant's balance of recovery] / [weekly compensation rate] = grace period in weeks

[expenses attributable to lien] / [grace period in weeks] = weekly amount payable by employer to claimant during grace period

*P & R Welding & Fabricating v. Workmen's Comp. Appeal Bd. (Pergola),* 549 Pa. 490, 701 A.2d 560 (1997). This is the computation used by the WCJ in this case, as appropriately adjusted by payments that had been made between the time of settlement and the hearing.

8. Thus, the Board erred when it suggested employer could pursue its lien against assets other than assets accrued pursuant to the third party settlement.

of receiving less monthly benefits after a settlement than he was receiving in worker's compensation payments." *Pennsylvania Mfrs. Ass'n Ins. Co. v. Wolfe*, 534 Pa. 68, 76, 626 A.2d 522, 526 (1993) (*Wolfe I*). Finally, where the recovery takes the form of an annuity, it is the total value of future payments upon which the calculations are to be based, not the present value at the time of settlement. *Wolfe II*, 646 A.2d at 767–68. It is against these principles that the Board's order in the present case must be measured.

The critical problem with applying the traditional calculation to this case, or to any case involving an annuity or other periodic future payments, is that it is based upon the total settlement value, only a portion of which has been actually received. Employer's counsel fee share is (or may be) based upon a lien value which has not yet been repaid, and the grace period is based upon a balance of recovery which claimant has not actually received. While in many situations it may not make much if any practical difference, that is not always true. For instance, in the usual (lump sum recovery) situation, the claimant's benefits may be suspended during the grace period specifically because she has already received a like amount from the tortfeasor. However, computing a grace period on the value of a *future* recovery will put the claimant in a position of receiving less than his or her monthly benefits wherever—as here—the ongoing annuity payments are less than the compensation amount, or in other cases where a large recovery is to be paid later rather than sooner.

We can easily illustrate this problem by examining a hypothetical situation with numbers similar to those in the case at bar. Take, for example, a structured settlement with an initial payment of $85,000.00 to be followed by five $20,000.00 payments at five-year intervals. The total value of the settlement is $185,000.00. After payment of $70,000.00 in costs and counsel fees, the remaining $15,000.00 is paid to employer in partial satisfaction of its $90,000.00 lien. All of the first $20,000.00 distribution will similarly go to satisfy the lien. If we assume a compensation rate of $250.00 per week, under the traditional calculation the claimant's balance of recovery is $95,000.00, yielding a grace period of 380 weeks or 7.3 years. Thus for over seven years, the claimant would be left with no compensation payment and no cash from the lawsuit. Such a result is obviously inconsistent with the purposes of the Workers' Compensation Law, as well as the principle that we cannot apply that law in such a way as to make the claimant worse off for having obtained a tort recovery. As this hypothetical makes clear, we cannot base our computations solely upon total values, but must also take into account the structure of a settlement. In order to do so, it is necessary to deal separately with present and future components of a structured tort recovery.

Returning to the case at bar, had claimant been forthcoming about the full extent of the settlement in the first instance, the following ought to have occurred:

1. Counsel would have been paid his $70,000.00 fee. This fee amounts to 36% of the total recovery of $195,263.20.[9]

9. Contrary to the mandate of *Wolfe II*, the parties in this case based their computations on the present value of the annuity ($170,000.00), rather than on the total value of the payments ($195,263.20). This is why the fee

appeared to be 41.2% rather than 36%. Using the 41.2% figure to calculate the fees to be paid by employer during each week that it is relieved of paying the annuity amount would

2. The remaining $15,000.00 would have been paid to employer, in partial repayment of its past due lien. Because employer would owe the counsel fees attributable to this payment, its lien would actually be satisfied in the amount of $23,437.50.[10]

3. There would have been no balance of recovery available for claimant, so employer would be entitled to no grace period.

With respect to the future payments due under the tort settlement [the annuity]:

4. Employer would have a present subrogation right in the annuity payments for the unsatisfied remainder of the past due lien.

5. Employer would have a contingent subrogation right in the annuity payments to the extent claimant remained disabled and entitled to compensation benefits.

6. Claimant would have been credited with having prepaid counsel fees on the entire recovery except for the amount attributable to employer's $15,000.00 payment.[11]

7. The annuity payments would be paid over to employer, less a 36% counsel fee. So long as claimant remained disabled, this could take the form of a credit against the weekly compensation payable. Thus here, because the weekly compensation benefit is greater than the annuity, employer would pay to claimant the difference between the benefit amount and the annuity, plus 36% of the annuity.

8. If at any time claimant's disability should cease, or diminish such that her partial disability benefit was less than the annuity, the amount that the annuity exceeded the benefits payable, less the 36% counsel fee, would be paid to employer until the remainder of the past-due lien is satisfied.

 Here, however, claimant did not remit the $15,000.00 available from the initial payment to employer. Indeed, claimant did not disclose the full extent of the settlement, so the WCJ was constrained to fashion a remedy after the fact. While the WCJ did not err by ordering claimant to pay a lump sum toward the past due lien, he did err by ordering claimant to pay more than the cash actually received from the tort settlement, *i.e.*, the $15,000.00 she wrongfully kept (the lien is then reduced by $23,437.50, which includes the counsel fee attributable to the $15,000.00). Therefore, the WCJ erred by ordering immediate repayment of the entire value of the lien.

 Realistically though, as the WCJ recognized, by the time the settlement terms were disclosed, claimant no longer had the funds to make such a lump sum payment to employer. Thus the WCJ properly treated the $15,000.00 as a recovery to claimant and ordered a grace period based upon the $23,437.50 benefit already received.[12] Again, for the reasons stated above, the longer grace period awarded here based upon the future value of the recovery was improper.

---

result in more fees being repaid than were originally paid.

10. $23,437.50–36% of $23,437.50 [or $8,437.50] = $15,000.00. The satisfaction amount (X) is calculated as follows:
$15,000.00 = X–0.36X
$15,000.00 = 0.64X

$15,000.00 / 0.64 = X

11. $70,000.00 [total counsel fee]-$8,437.50 [fee paid by employer] = $6,1562.50

12. As noted above, the $15,000.00 cash payment represents a recovery of $23,437.50 less a 36% counsel fee of $8,437.50.

Finally, with respect to the ongoing annuity payments, the WCJ did not err in ordering that they be paid over to employer. We disagree with the Board's statement that:

"The WCJ does not have any authority under the Act to require her to 'turn over' to defendant the annuity checks that she is currently receiving as part of the third-party settlement. Such a settlement was not made within the provisions of this Act and as such the WCJ had no authority under the Act, no matter how 'just' it may seem to be, to craft such an Order."

*Diane Mrkich v. Allegheny County Children and Youth Servs.* (A99–1262, August 30, 2000), at 5. Section 319 of the Act simply states that the employer is subrogated to the right of the employee; it makes no distinction among various types of tort recoveries. The annuity in this case represents a part of the tort recovery no less than the initial lump sum distribution, and is equally subject to the employer's subrogation rights.[13] (See numbered paragraphs 4 and 5 above). During the grace period, paying over the annuity would be credited toward satisfaction of the past due lien.[14] At the end of the grace period, it makes no difference whether the annuity is characterized as in satisfaction of the past due lien or the ongoing subrogation rights accruing in the benefits being paid. Those payments would be as described in numbered paragraphs 7 and 8 above.[15]

In sum, the traditional mathematical formula used to calculate subrogation distributions was devised to facilitate the principles underlying the gross method and the Workers' Compensation Law, not to override them. It is these principles to which we must remain faithful. We therefore remand for calculations in accordance with this opinion.

## ORDER

AND NOW, this 28th day of June, 2002, the orders of the Workers' Compensation Appeal Board in the above captioned matters are VACATED and REMANDED to the Board for further remand to the Workers' Compensation Judge for recalculation of subrogation and benefit payments in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

13. *See generally Wolfe II*, 646 A.2d at 768–69.

14. Note that the lien amount would be satisfied in the amount of the annuity payment, but claimant would pay over the annuity amount less the 36% counsel fee she has prepaid.

15. If the claimant remains disabled, the total subrogation lien may never be fully satisfied. However, this is always the case when the tort recovery is less than the claimant's lifetime benefits.