**Arthur R. ZACOUR, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MARK ANN INDUSTRIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 17, 2003.

Deicded May 19, 2003.

---

Frank J. Grzywinski, Pittsburgh, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Arthur R. Zacour (Claimant) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Claimant's Petition to Review Compensation Benefit Offset. The issue under review concerns the appropriate percentage of reimbursement owed by Mark Ann Industries (Employer) on future medical costs. We modify the Board's order.

On December 18, 1997, Claimant sustained a hip injury as a result of a work-related automobile accident. Employer issued a notice of compensation payable under which Claimant received temporary total disability benefits. Thereafter, Claimant pursued a third-party action and recovered a settlement of $125,000. He acknowledged that Employer has a subrogation lien against this recovery.

At the time Claimant received the third-party settlement, he was not entitled to receive disability benefits [1]; however, his entitlement to future medical treatment as a result of the work injury continued. Al-

---

1. Neither the parties nor the record explain why Claimant was not eligible to receive disability benefits. Presumably, he returned to work without a loss of earnings.

though the parties agreed that Employer would receive a credit for any such future medical bills against the balance of the settlement amount, they disagreed as to the amount of reimbursement Employer must pay Claimant, per medical bill, for legal fees and costs associated with Claimant's securing of the settlement amount. Claimant contends that the percentage Employer must pay is 40.51%,[2] while Employer argues that the correct percentage is 22.28%. To resolve the dispute, Claimant filed a Petition to Review Compensation Benefit Offset.

Following argument, the WCJ agreed with Employer that the correct percentage of Employer's reimbursement of medical expenses would be 22.28%. The Board affirmed, and this petition for review followed.[3] The narrow issue before us is whether the WCJ erred by concluding that the Employer's reimbursement share of future medical expenses is 22.28%.

Section 319 of the Workers' Compensation Act (Act)[4] provides in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and the employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of the recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated by the employer on account of any future installments of compensation. . . .

Interpreting this section, our Supreme Court determined that when calculating subrogation rights and liabilities between the claimant and employer, the "gross method," as opposed to the "net method," is to be used. *P & R Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997).[5] Under the gross method, any balance from the third-party

---

**2.** Claimant originally argued that the percentage was 40.54%, but he has amended his calculation to 40.51%.

**3.** This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, or whether an error of law or a constitutional violation occurred. *ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa. Cmwlth.2000). Also, the "capricious disregard" of evidence standard of review is now a component of appellate consideration in every administrative agency adjudication if the question is properly brought before the Court.

*Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). Claimant has not raised a capricious disregard of evidence issue in this case.

**4.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

**5.** The main difference between using the gross method and the net method is how legal expenses associated with the third-party recovery or settlement are treated. For an explanation of the net method, *see P & R Welding*.

recovery or settlement (Balance of Recovery) is determined by deducting the employer's accrued compensation lien (Accrued Lien) from the total recovery (Total Recovery). The employer, however, must reimburse the claimant for its proportionate share of legal expenses and costs attributable to the amount of the Accrued Lien. The remaining legal expenses are applied to the Balance of Recovery and, in the typical case, are divided proportionately over the "Grace Period" due to the employer. The Grace Period is calculated by dividing the Balance of Recovery by the weekly compensation rate being paid to the claimant, to arrive at a period of weeks for which the employer is excused from making compensation payments, except for its proportionate share of legal expenses and costs attributable to the Balance of Recovery. That proportionate share is calculated by dividing the total expenses attributable to the Balance of Recovery by the number of weeks of the Grace Period. *Id.*

To illustrate the gross method, we shall use the amounts pertaining to the present case:

(1) Total Recovery ........................$ 125,000.00
    minus Employer's Accrued Lien ........ $ 27,847.96

    $ 97,152.04 (Balance of Recovery)

(The Accrued Lien of $27,847.96 represents 22.28% of the Total Recovery of $125,000.00.)

(2) Total Expenses
    of Recovery ...........................$ 50,637.73
  (a) Expenses attributable to
    Accrued Lien (22.28%) .................$ 11,282.09
  (b) Expenses attributable to
    Balance of Recovery (77.72%) ..........$ 39,355.64

(3) Accrued Lien .........................$ 27,847.96
    minus Expenses attributable
    to Accrued Lien ..................... $ 11,282.09

    $ 16,565.87 (Net Lien)

(The Net Lien is the amount Claimant is to pay to Employer upon receipt of the Recovery.)

(4) Balance of Recovery ..................$ 97,152.04
    divided by Weekly Workers'
    Compensation Rate ...................$  433.05

    224.34 (Grace Period)

(The Grace Period is the number of weeks that Employer need not pay to Claimant the Weekly Workers' Compensation Rate, aside from Employer's share of the Expenses attributable to the Balance of Recovery, as such compensation is covered by the Balance of Recovery.)

(5) Expenses attributable to
    the Balance of Recovery ...............$ 39,355.64
    divided by the Grace Period ............  224.34

    $  175.43 (Weekly Reimbursement of
              Expenses attributable to the
              Balance of Recovery)

(The Reimbursement of Expenses attributable to the Balance of Recovery is that amount Employer is to pay Claimant weekly during the Grace Period to cover the legal costs and expenses Claimant incurred to obtain the Balance of Recovery.)

In the present matter, Claimant is not presently eligible for weekly compensation benefits, and therefore a Grace Period does not apply. This circumstance may change should Claimant suffer a recurrence of his disability. Claimant remains eligible for continuing medical treatment arising from his work injury, however. As the WCJ determined, treatment of medical expenses are not confined by a Grace Period. Such expenses will, however, serve to reduce the Grace Period as they are incurred as they will be paid from the Balance of Recovery until that sum is depleted, if ever.

■ Again, the single issue before us is the correct percentage Employer must pay to Claimant to reflect the costs attributable to medical expenses paid from the Balance of Recovery. Employer contends, and the WCJ and Board agreed, that the correct percentage is the same percentage that Employer's Accrued Lien bears to the Total Recovery, namely 22.28%. Claimant argues that the correct percentage is the same as the percentage that Employer's Reimbursement of Expenses attributable to the Balance of Recovery during the Grace Period bears to the Weekly Compensation Rate, namely 40.51%.

In several decisions where we have addressed situations that fall beyond the "traditional" gross method formula illustrated above, such as where settlements involve structured payments over time, we have consistently held that an employer's proportionate share of costs with respect to its lien reflects the percentage the Expenses of Recovery bear to the Total Recovery. *See Mrkich v. Workers' Compensation Appeal Board (Allegheny County*

*Children & Youth Services)*, 801 A.2d 668 (Pa.Cmwlth.2002); *Budd Co. v. Workers' Compensation Appeal Board (Settembrini)*, 798 A.2d 866 (Pa.Cmwlth.2002); *Allegheny Beverage Corp. v. Workmen's Compensation Appeal Board (Wolfe)*, 166 Pa. Cmwlth.646, 646 A.2d 762 (1994). As we stated in *Budd Co.*:

> [T]he proportionate share of costs attributed to the lien is calculated by dividing the lien amount by the total recovery then multiplying this fraction by the total amount of costs. The same result may be reached by dividing the cost amount by the total recovery and then multiplying this fraction by the amount of the ... lien. The latter approach provides an added measure of flexibility where the calculation becomes more complicated, such as where the tort suit is resolved by a structured settlement rather than a lump sum payment.

*Budd Co.*, 798 A.2d at 869 n. 3.

Thus in the present case, the Expenses of Recovery ($50,637.73) divided by the Total Recovery ($125,000) equals .4051, or 40.51%. Therefore, any medical expenses incurred by Claimant must be reimbursed by Employer at a rate of 40.51%, and the WCJ erred by not so holding.

Here, by erroneously determining that 22.28% is the correct percentage Employer must pay Claimant for costs attributable to medical expenses paid from the Balance of Recovery, the WCJ confused the Expenses attributable to the Accrued Lien with those attributable to the Balance of Recovery. The percentage of Expenses attributable to the Accrued Lien, however, applies only to the Accrued Lien. Further, such percentage will always be uniquely dependent in each case upon the amount of the

Accrued Lien at the time of receipt of the Total Recovery. In *P & R Welding*, for example, the Accrued Lien constituted 71% of the Total Recovery. If in the present case, the Accrued Lien constituted 71% of the Total Recovery, the WCJ's holding would result in Employer reimbursing future medical costs at a rate of 71%, when the legal fees and costs (and thus the Reimbursement of Expenses attributable to the Balance of Recovery over the Grace Period) amounted to only 40.51%. Obviously such a result would be incorrect.

The Board's Decision, as well as the argument of Employer, suggests that the WCJ's confusion arose from perhaps a narrow reading of Form LIBC–380 of the Department of Labor and Industry, Bureau of Workers' Compensation, regarding Third Party Settlement Agreements. Part I of this form provides that "BALANCE OF RECOVERY shall constitute fund for credit against future workers' compensation payable, subject to reimbursement to claimant of expenses of recovery at the rate of ____% on credit used." The instructions for Part I, set forth on the back of the form, provide that "[t]he rate of reimbursement to the employee of expenses of recovery is determined by dividing the workers' compensation lien by the gross recovery." In this case, that calculation results in 22.28%.

Part II of Form LIBC–380, however, provides for another computation for the Expenses of Recovery, namely that computed for payments over the Grace Period. It is clear that the Expenses of Recovery under Part I of the form reflect Steps 2 and 3 of the Supreme Court's formula set forth in *P & R Welding*, as described in our calculations set forth above; while Part II, at subsection C reflects Step 5 of the formula. Although the present case appears to fall beyond the "traditional" gross method formula, our holdings in *Mrkich* and *Budd Co.* firmly establish how an employer's proportionate share of costs is to be calculated with respect to its lien and credits.[6]

In accordance with the above, the order of the Board is reversed to the extent that it affirmed the WCJ's determination that the appropriate percentage of reimbursement owed by Employer and/or its insurer to Claimant is 22.28% for each credited medical expense occurring after the date Claimant received the third-party settlement, and the percentage of such reimbursement is hereby modified from 22.28% to 40.51%. The Board's order is affirmed in all other respects.

Judge SMITH–RIBNER concurs in result only.

*ORDER*

AND NOW, this 19th day of May, 2003, the order of the Workers' Compensation Appeal Board (Board) is reversed to the extent that it affirmed the Workers' Compensation Judge's determination that the appropriate percentage of reimbursement owed by Mark Ann Industries (Employer) and/or its insurer to Arthur R. Zacour (Claimant) is 22.28% for each credited medical expense occurring after the date Claimant received the third-party settlement. The percentage of reimbursement

---

**6.** It is also worth observing that the Act is not to be interpreted in a manner that would place an injured employee in the position of receiving fewer benefits after a third-party settlement or recovery than if he or she had never pursued the third-party claim. *Mrkich.* Here, if Claimant's future medical bills came to equal the Balance of Recovery ($97,-152.04), a Reimbursement of Expenses at a rate of 22.28% would amount to $21,645.47. As the Expenses attributable to the Balance of Recovery equal $39,355.64, Claimant would be out of pocket $17,710.17, an unsupportable result under the Act.

is hereby modified from 22.28% to 40.51%. The Board's order is affirmed in all other respects.